UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MARTHA ANN WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:07-0024 |
| ) | Judge Echols |
| ) | |
| UPPER CUMBERLAND ELECTRIC ) | |
| MEMBERSHIP CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Upper Cumberland And Electric Membership Corporation's ("Defendant's") Motion for Summary Judgment (Docket Entry No. 11), to which Plaintiff Martha Ann Wright ("Plaintiff") responded in opposition, and Defendant filed a reply.

This is a race discrimination case brought by Plaintiff, who is African American, against Defendant, her current employer. In the Complaint, Plaintiff asserted claims for race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*

## I. FACTS

Plaintiff's prior employment history included working on the assembly line for a boot company, working in the shipping department of an aluminum plant, working on a concrete crew for the Tennessee Valley Authority, working in maintenance at Cordell Hull Dam, and working as a student clerk at Volunteer State Community College while attending college. Upon completing an Associate's Degree in Business with a major in Accounting at Volunteer State, Plaintiff applied for employment with Defendant and was hired as an "Accounting Clerk" in 1992. In this job, Plaintiff used computer billing and order/purchasing computer applications. Plaintiff assisted with inventory-related functions on two occasions, both of which occurred at year-end and involved counting inventory items she was told to count by Defendant's Purchasing Agent, Donald Denny.

1

Defendant later unilaterally transferred Plaintiff to the position of Receptionist/Secretary. Plaintiff did not object to this transfer, nor did the transfer result in a reduction in Plaintiff's pay. Plaintiff has served in the receptionist position for approximately ten (10) years and her duties include answering the telephone, taking and relaying messages, cleaning the kitchen, and doing the dishes.

In February 2006, Defendant posted a job opening for the new position of Purchasing/Inventory Assistant. The position was a one-time posting, meaning that the job would be filled on a one-time basis and any future postings for the position would have to be approved by Defendant's Board of Directors. The reason this position was posted on a one-time basis was because Purchasing Agent Donald Denny had been employed with the company for many years, he was nearing retirement, and he had some major health issues. The Purchasing Agent's functions are to oversee the entire inventory, deal with vendors on a day-to-day basis, and purchase the necessary items such as tools, vehicles, supplies, and uniforms to keep the business running. The Purchasing Agent is also highly involved in budgeting, a three-month process that begins in March of each year. Defendant's concern was that Mr. Denny was the only person who had knowledge of the duties and functions of his job.

Mr. Denny has utilized a manual ledger system for the past forty (40) years. Through its outside billing agency, Defendant purchased a computer software inventory control system for purchasing orders. This system would enable Defendant to computerize functions that are currently handled manually by Mr. Denny. According to Defendant, part of the purpose in creating the Purchasing/Inventory Assistant position was to ensure that people with the necessary computer skills could implement the computer program once Mr. Denny retired. However, Defendant has not utilized the new software system since filling the Purchasing/Inventory Assistant position. Instead, Defendant has continued to use Mr. Denny's manual system.

Defendant has "Position Guides" or job descriptions for each employment position. These Position Guides list the essential functions of each job as well as the qualifications the company

seeks for the position. The Position Guide for the Purchasing/Inventory Assistant position states in part:

> This is a subordinate position reporting to the Purchasing Agent. This position is responsible for assisting with the develop[ment] of, implementation of, administration of, and control of all functions associated with purchasing and inventory management to meet the cooperative's needs.

Defendant's General Manager, Carl Brandt, testified that the Board of Directors' intent in including this language in the Position Guide was that the employee selected for the position would be capable of implementing the computerized purchase order system. Plaintiff disputes that this was the Board's intent because the Board did not mention computer skills or software usage in the Position Guide it adopted detailing the purposes, tasks, duties and qualifications for the Purchasing/Inventory Assistant position. Further, Plaintiff points out, the minutes of the Board meetings during which the new position was discussed and approved did not include any mention that the Board even considered whether the person chosen to fill the new position should possess a certain level of computer skills in order to function successfully in the new position.

Defendant posts open employment positions internally for a period of three to five days. The Purchasing/Inventory Assistant position was posted internally and eighteen current employees applied. Because this position would have provided higher pay and greater challenge, Plaintiff applied for the position. All internal candidates were granted an interview. Mr. Brandt and Mr. Denny together interviewed all internal candidates for the position.

After all of the interviews were completed, Mr. Brandt, in consultation with Mr. Denny, selected Melissa Gregory, an Accounting Clerk, to fill the new position. Defendant asserts that it selected Ms. Gregory based on the company's needs for the future of the purchasing department, Ms. Gregory's extensive computer skills, her performance during the interview, and her good attendance record as an employee. Defendant states it wanted to fill this position with someone who had the computer skills to enable that person to implement the purchase order system after Mr. Denny's retirement.

At the time the hiring decision was made, Melissa Gregory had been employed by Defendant for approximately six (6) years. Prior to joining Defendant's staff, Ms. Gregory had extensive experience and training in computer programs and systems, billing and accounting. She worked at a nursing home where she set up various computer programs and spreadsheets. She also prepared input for a billing system. Ms. Gregory developed a "patient face sheet" program for the nursing home. Once this program was set up, she was responsible for any troubleshooting issues that arose with the system. The nursing home had a central supply system, and Ms. Gregory was responsible for handling the billing tasks for the nursing home. She worked with vendors, families and insurance companies to procure durable medical equipment and other necessary items for patients. She was also cross-trained in payroll and accounts payable and filled in as necessary. She handled bank reconciliations, journal entries, and general ledger balancing for five (5) separate bank accounts for two (2) different nursing homes. Ms. Gregory also worked in patient accounting for the nursing home and was the representative payee for over forty (40) patients' Social Security and SSI checks.

While serving as an Accounting Clerk for Defendant, Ms. Gregory performed many more tasks than those set forth in the Position Guide for Accounting Clerk. She learned all of the workings and functions of the computer program that handled all of Defendant's billings. As technology advanced, Defendant migrated to the use of personal computers and networks, and Ms. Gregory was one of those responsible for troubleshooting problems that arose. She fielded calls from Defendant's consumer services clerks, supervisors, servicemen, managers, and many other employees and assisted in performing necessary computer repairs. She is able to take a computer completely apart and put it back together again. She has replaced modems, hard drives and CD drives on inoperable machines. She has also monitored stock, obtained price quotes and handled many purchasing functions within her department and for the district offices. This included the purchase of equipment, supplies and forms. When Defendant opened a new building in Cookeville, Tennessee, Ms. Gregory was assigned to assist in installing the computer network and phone

systems in the new office. She installed all of the software on every computer and programmed all of them. Defendant provides information about Ms. Gregory's accomplishments since taking over the Purchasing/Inventory Assistant position, but Plaintiff claims those matters are not relevant to Defendant's reasons for choosing Ms. Gregory for the job in the first place.

Plaintiff admits that she has no information technology ("IT") experience at all, and she specifically lacks experience in the installation of computer network systems, troubleshooting, doing repairs, providing advice concerning computers or network systems, and upgrading phone and computer systems. But she claims that Defendant's stated reasons for giving the job to Ms. Gregory are a subterfuge for racial discrimination.

Plaintiff points out that the Position Guide for the Purchasing/Inventory Assistant position, which was drafted by her direct supervisor, then Assistant General Manager Robert Woodard (Brandt Depo. at 83), listed five qualification requirements: (1) a high school diploma or equivalent; (2) a minimum of five years experience with an electric utility; (3) familiarity with electric utility construction specifications, work order and plant accounting procedures, and a willingness to complete the REA Borrower's Accounting Course; (4) an ability to communicate and deal with industry vendors, management, administrative, engineering and construction personnel; and (5) the ability to perform essential functions of the job with or without reasonable accommodation. Mr. Brandt testified that the Position Guide accurately describes the position and its duties. (Brandt Depo. at 105-106.)

As to the five requirements listed in the Position Guide, Plaintiff contends she was better qualified than Ms. Gregory. Plaintiff has an Associate's Degree in Business with a major in Accounting while Ms. Gregory has a high school diploma. Plaintiff had fourteen (14) years of experience with Defendant while Ms. Gregory had six (6) years of experience with Defendant. Plaintiff had completed the REA Borrower's Accounting Course with a score of "A." Plaintiff already knew many of the vendors and communicated with them, and she had the ability to perform the essential functions of the job with or without reasonable accommodation. Plaintiff listed on her

application for the position that she had knowledge of Defendant's computer system, email, Excel, and Microsoft Office Word, and she could type. (Docket Entry No. 11-4.)

Plaintiff contends that the need for more extensive computer skills than she possesses was not mentioned, let alone required, in the Position Guide for the new position, and she testified Mr. Brandt and Mr. Denny did not ask her about her computer skills during the interview. Plaintiff claims that Defendant did not raise the issue of computer skills as the reason for its selection of Ms. Gregory until after Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). She says she first learned during discovery in this lawsuit that Defendant claims it intends to computerize its inventory ledger system. Plaintiff also argues that Defendant did not consider Ms. Gregory's attendance record in hiring her for the position because Mr. Brandt testified that all documents he considered when choosing Ms. Gregory were disclosed to Plaintiff during discovery, yet employee attendance records were not among the documents disclosed to Plaintiff by Defendant. Plaintiff also challenges Defendant's reliance on Ms. Gregory's performance during the interview because Mr. Brandt could not recall anything substantive about her interview and he kept no notes of the interviews because such notes "are discoverable . . . and can be used against [the company]." (Docket Entry No. 11-5, Brandt Depo. at 180.) Plaintiff testified that her former direct supervisor, Mr. Woodard, now Defendant's President and Chairman of the Board, agreed with her, when she complained about Defendant's selection of Ms. Gregory, that Plaintiff was a better choice for the new position than Ms. Gregory.

In support of her race discrimination claim, Plaintiff brings up other events that occurred in the past which she says support her view that she was treated differently based on race. Plaintiff testified that when she sought employment with Defendant upon her graduation from Volunteer State, she did not expect to be hired because she knew of Defendant's reputation for not hiring African American employees, and she was "shocked" to learn that she was hired. Plaintiff became Defendant's second African American employee. The first, a meter reader, was hired in 1973, and no other African Americans have been hired since Plaintiff was given a job in 1992.

6

Plaintiff testified that the part of her receptionist job that requires her to clean up the kitchen after other employees use it is degrading. Plaintiff further testified that she was treated differently by Defendant and its employees throughout her sixteen (16) years of employment. According to Plaintiff, she can tell by the body language of her coworkers and by how they treat her (by not talking to her on the phone, not visiting with her and acting like they do not hear her) that they do not want her around them.

While Plaintiff was not subjected directly to racial epithets, she stated during her deposition that she heard from other employees that L.C. Grisham, Defendant's District Manager, (Docket Entry No. 11-6 at 39), used the "n" word when he spoke to other employees about Plaintiff and the other African American worker, and these employees could testify in her case. (Docket Entry No. 11-2, Wright Depo. at 69, 131.) Plaintiff also testified that another employee, Grover Junior Ellenburg, a serviceman at the cooperative, recently screamed at Plaintiff that "all black people are stupid," that Mr. Brandt and other co-workers witnessed this loud episode, and that Mr. Brandt and Mr. Ellenburg "walked off together" afterwards. (Id. at 70, 132-136.) Moreover, Plaintiff testified that her supervisor, Mr. Woodard, proudly and repeatedly told her on more than one occasion that, during his college days, he let the black maid who worked at his home into the house by the front door. Plaintiff alleged Mr. Woodard told her the story again even when she approached him to complain that Ms. Gregory had received the Purchasing/Inventory Assistant position. Plaintiff did not respond to Mr. Woodard when he told the story, but she considered Mr. Woodard's remarks to be inappropriate, hurtful, and a racial slur. (Id. at 111-113, 118-119.)

Throughout her employment with Defendant, Plaintiff sought promotion to other positions, but she was denied promotion. In 1996 and again in 1999, Plaintiff sought a Consumer Services Clerk position. Plaintiff testified she performed the duties of the position on a temporary basis and thought she was well-qualified to perform the job. She did not receive the promotion because she did not live in the Carthage service area and had a part-time job at Wal-Mart. Plaintiff felt that her race was a factor in her rejection for the position because several of Defendant's Caucasian

7

employees were not required to live within the service area and were permitted to drive to work from their homes outside the service area. In 1997 Plaintiff sought promotion to the Executive Secretary position, and she felt her race played a role when she was not awarded that position. In 1999 Plaintiff sought promotion to the position of Payroll Specialist. Plaintiff thought her Associate's Degree as well as her completion of Defendant's REA course in accounting and bookkeeping with a score of "A" qualified her for the promotion, but again she believed that race played a factor. Other than her own testimony and conclusions, Plaintiff has not provided any other substantive evidence to support her contention that race discrimination precluded her from receiving any of these positions.

Defendant admits Plaintiff testified that cleaning the employee kitchen is degrading to her, but the prior receptionist also cleaned up the kitchen and she is Caucasian. Defendant argues that information about discrete events in the past are not relevant because any legal claim based on such events is now time-barred, and Plaintiff has not brought a claim for a hostile work environment.

After learning that Ms. Gregory was chosen for the Purchasing/Inventory Assistant position, Plaintiff filed an administrative charge of race discrimination with the EEOC. Following investigation, the EEOC issued a determination on January 25, 2007, finding Plaintiff was more qualified than Ms. Gregory for the position and that there was reasonable cause to believe that Defendant violated Title VII in denying Plaintiff the position. Thereafter, when settlement efforts failed, the EEOC issued a right to sue letter to Plaintiff and this lawsuit followed. The Court leaves for another day whether the evidence of the EEOC determination is admissible at trial, see EEOC v. Ford Motor Co., 98 F.3d 1341, 1996 WL 557800 (6th Cir. Sept. 30, 1996); the Court includes these facts here only to complete the Court's statement of the procedural history of the case.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there is not a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000).

8

The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

Plaintiff has not produced any direct evidence that race discrimination motivated Defendant's decision to deny Plaintiff promotion to the new position of Purchasing/Inventory Assistant. See Laderach v. U-Haul of Northwestern Ohio, 207 F.3d 825, 828 (6th Cir. 2000). Therefore, the burden-shifting framework of McDonnell-Douglas/Burdine applies. See Alexander v. Local 496, Laborers' Int'l Union of North Am., 177 F.3d 394, 402 (6th Cir. 1999).

To make out a *prima facie* case of race discrimination based on a failure to promote, Plaintiff must show that: (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was considered for and denied the promotion; and (4) another employee with similar qualifications who was not a member of the protected class received the promotion. See Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 719 (6th Cir. 2006). To satisfy the fourth

9

element, Plaintiff must "establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications." See White v. Columbus Metro. Housing Auth., 429 F.3d 232, 242 (6th Cir. 2005).

Defendant contends that Plaintiff cannot establish the fourth element of her *prima facie* case because Plaintiff has not produced evidence that she and Ms. Gregory possessed similar qualifications. Defendant claims that Plaintiff did not have the computer skills Defendant was looking for, Plaintiff did not have the inventory, billing or purchasing experience that Ms. Gregory possesses, and Plaintiff's attendance record was not as good as Ms. Gregory's.

The Court may consider the qualifications of both Plaintiff and Ms. Gregory in determining whether there is sufficient evidence to establish the fourth element of the *prima facie* case, even though there may be some overlap with the Court's consideration of Defendant's legitimate, non-discriminatory reasons for choosing Ms. Gregory over Plaintiff. See White, 429 F.3d at 242. But a comparison of Plaintiff's and Ms. Gregory's qualifications is truncated by the existence of a jury question as to what the actual qualifications for the position were. Although Mr. Brandt testified that the Board discussed computer skills when it approved the new Purchasing/Inventory Assistant position and adopted the Position Guide for the new position, the Board's minutes do not reveal that any such discussions took place. Plaintiff produced the Position Guide for the Purchasing/Inventory Assistant position, and it does not mention the need for any computer skills at all. The Position Guide stated five qualification requirements for the position, and Plaintiff produced evidence that her qualifications as to each of the five stated requirements exceeded Ms. Gregory's qualifications. Moreover, Plaintiff testified that Mr. Brandt and Mr. Denny did not question her about her computer skills during the job interview. Rather, she alleges, Defendant first raised computer skills as a critical qualification for the new position only after Plaintiff filed a charge of race discrimination with the EEOC. In light of the five qualification requirements stated in the Position Guide, the Court concludes, taking all of the evidence in the light most favorable to Plaintiff, that the evidence is

10

sufficient to show that Plaintiff's qualifications were similar to, or in fact better than, Ms. Gregory's qualifications.

Plaintiff having established a *prima facie* case, the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for awarding the new position to Ms. Gregory rather than Plaintiff. See Grizzell, 461 F.3d at 719-720. If, in fact, the possession of extensive computer skills was a critical job qualification for the position, then Defendant has produced evidence that Ms. Gregory possessed greater aptitude in computers than Plaintiff. And if the employee's attendance was a consideration, even though that was not expressly stated in the Position Guide, then Defendant has produced the testimony of Mr. Brandt that Ms. Gregory's attendance record was better than Plaintiff's.

The burden then shifts again to Plaintiff, who must prove that Defendant's proffered legitimate, non-discriminatory reasons for choosing Ms. Gregory over her were simply a pretext for race discrimination. See id. at 720;Laderach, 207 F.3d at 828 (noting that, to show pretext, plaintiff must prove the employer's asserted reason had no basis in fact, the reason did not in fact motivate the adverse employment action, or the reason was insufficient to motivate the adverse employment action). The Court concludes that, taking the record most favorably to Plaintiff, there is a fact dispute about whether Defendant's decision to deny Plaintiff the promotion to Purchasing/Inventory Assistant was motivated by race discrimination or by legitimate business judgment. While Defendant generally is free to choose among qualified candidates for employment positions, see Bender v. Hecht's Dept. Stores, 455 F.3d 612, 626 (6th Cir. 2006), Defendant may not rely on a prohibited reason such as race for choosing one employee over another. Here, in addition to the evidence that Plaintiff was as qualified or better qualified than Ms. Gregory for the Purchasing/Inventory Assistant position (as that position was described in the Position Guide), the record reveals other probative evidence giving rise to reasonable inferences of race discrimination which preclude the entry of summary judgment against Plaintiff.

11

According to this factual record, Plaintiff was one of only two African Americans hired by the Defendant in thirty-five (35) years. No African Americans have been hired or promoted by the Defendant since 1992. Mr. Brandt confirmed this is correct information. (Brandt Depo. at 39, 46.) Additionally, Mr. Brandt said that he had interviewed a "handful,"–by his definition, five or fewer–African Americans in the nine years he had served as General Manager, even though Defendant employs approximately 140 individuals and can receive more than one hundred applications for one position. (Id. at 35, 49.) Mr. Brandt stated that he does not take notes of employment interviews because such notes "are discoverable . . . and can be used against [the company]." (Id. at 180.) There is also evidence that Defendant's employment application asks applicants to self-identify their race and gender voluntarily (Docket Entry No. 11-6), although Defendant asserts that the federal government requires it to collect this information. Mr. Brandt confirmed that, even after Ms. Gregory was hired, the Defendant did not use computer software to modernize the Purchasing Department, although the company's future plan is to use a computerized system. (Brandt Depo. at 94.)

There is also other evidence in the record that might persuade a reasonable jury to find that Defendant's employment decisions concerning Plaintiff were motivated by race discrimination. Plaintiff pointed to evidence that one of Defendant's District Managers, Mr. Grisham, allegedly used the "n" word when referring to her and the other African American worker in conversation with other company employees. Plaintiff described her recent conversation with Mr. Ellenburg during which he screamed that "all black people are stupid." According to Plaintiff, Mr. Brandt and other employees heard the remark, and it does not appear from this record that Mr. Brandt, the General Manager, made any investigation or took any corrective action. Plaintiff's direct supervisor for many years, Mr. Woodard, told Plaintiff repeatedly the story of how he used to let the black maid in to his home by the front door. When Plaintiff complained to Mr. Woodard that Ms. Gregory received the promotion Plaintiff sought, Mr. Woodard told his story to Plaintiff again, even though, according to Plaintiff, he agreed that Plaintiff was a better choice for the job than Ms. Gregory.

12

The Court also notes that it was Mr. Woodard who unilaterally transferred Plaintiff to the receptionist position years ago from her initial job as Accounting Clerk and assigned as part of her new duties the job of cleaning up the kitchen after other employees used it. The Court finds that from all the evidence reasonable jurors might agree with Plaintiff that she was precluded from promotion based on her race.

The record shows that Plaintiff made efforts through the years to improve her employment qualifications, including obtaining an Associate's Degree and taking additional educational courses; yet, she was denied promotions for which she applied and appeared to be qualified. Specifically, Plaintiff pointed to the promotion she sought for a Consumer Services Clerk position in 1999. Plaintiff was denied the position on the ground that she lived outside the service area; yet she asserts that Caucasian employees who held the same position were permitted to live outside the service area and drive in to work.

The Court recognizes Defendant's concern that any prior discrete acts of alleged racial discrimination in promotion would now appear to be barred by the Title VII and the THRA statutes of limitations. Even if a legal claim for race discrimination is time-barred, however, evidence relating to allegedly discriminatory prior incidents may be relevant and admissible at trial as background support for Plaintiff's current race discrimination claim. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112 (2002) (noting that, even though timely charge was not filed, evidence of prior occurrences may constitute relevant background in proceeding challenging current practice).

Defendant also contends, citing Bender, that Plaintiff's proof of racial discrimination is so scarce that to survive this summary judgment motion she must show that her qualifications were so significantly better than Ms. Gregory's that no reasonable employer would have chosen Ms. Gregory over the Plaintiff. The Court acknowledges that Plaintiff's mere personal beliefs, conjecture and speculation that race played a role in employment decisions concerning her are not alone sufficient to support an inference of race discrimination. See Chappell v. GTE Prods. Corp., 803 F.2d 261,

13

268 (6th Cir. 1986). But the Court concludes that Plaintiff produced sufficient proof in this record, as detailed above, to require submission of the case to a jury to decide the issue of pretext. See Bender, 455 F.3d at 626-627 ("Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination.") In addition to the proof supporting Plaintiff's *prima facie* case, Plaintiff produced substantial additional evidence which, if believed by the jury, could result in a finding that Defendant's proffered legitimate, non-discriminatory reasons for choosing Ms. Gregory over Plaintiff were a pretext for race discrimination.

## V. CONCLUSION

For all of the reasons stated, Defendant's Motion For Summary Judgment (Docket Entry No. 11) will be denied. This case will proceed to trial as previously scheduled.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE